IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| CLAIRE G. GASTANAGA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24CV485 (RCY) |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

In this action, Plaintiff Clarie Gastanaga challenges the sufficiency of the response she received from Defendant U.S. Department of Health and Human Services ("HHS" or "Defendant") in answer to a 2021 records request lodged pursuant to the Freedom of Information Act (FOIA). The case is presently before the Court on the parties' cross-motions for summary judgment. The matters have been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J); Fed. R. Civ. P. 78. For the reasons stated below, the Court will grant in part and deny in part each motion for summary judgment.

## I. BACKGROUND

In reviewing cross-motions for summary judgment, the Court will consider each motion separately on its own merits to determine if either party deserves judgment as a matter of law. *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 291 (4th Cir. 2021) (citations omitted). In considering each motion, the Court will exercise great care to resolve any factual disputes and "competing, rational inferences" in the light most favorable to the opposing party. *Id*. (cleaned

up).  Informed by the parties' listings of undisputed facts pursuant to Local Civil Rule 56(B), the Court has concluded that the following narrative represents the undisputed facts of this case.

## A.  Factual Background

Plaintiff submitted a FOIA request pursuant to 5 U.S.C. § 552 to Defendant in December 2021.  Def. Stmt. Undisp. Facts ("SUF") ¶ 1; Pl. SUF ¶ 1.  Plaintiff's request sought "copies of all documents, emails and other written and electronic records related to the application for and award of grant #90NA8410 to the Mattaponi Indian Reservation by HHS/ACF[1]/Administration for Native Americans."  Def. SUF ¶ 2; Pl. SUF ¶ 3.[2]  HHS produced 260 pages of documents to Plaintiff on September 30, 2024.  Def. SUF ¶ 10; Pl. SUF ¶ 4.  The documents produced by HHS were drawn from a search of a database, GrantSolutions, utilized by the ACF's office of Grants Management.  Def. SUF ¶ 4.[3]  HHS believed Plaintiff's FOIA request was subject to the review and predisclosure notification procedures described at 45 C.F.R. § 5.42 and directed by Executive Order No. 12,600.[4]  Def. SUF ¶ 7; Pl. SUF ¶¶ 3, 19.  HHS ultimately withheld certain information, citing FOIA Exemptions 4, 5, and 6.  Def. SUF ¶ 11.  HHS produced no emails.  Pl. SUF ¶ 4.[5]

---

[1] "ACF" refers to the Administration for Children and Families, an operating division of HHS.  What We Do Admin. for Child. and Fams (accessed March 30, 2026), https://acf.gov/about/what-we-do [https://perma.cc/Y9DD-SXFU].

[2] The Court notes as additional background that grant #90NA8410 was awarded to provide funds for the Mattaponi Tribe's research, collection, and analysis of historical materials to prepare a federal government petition for acknowledgment as a sovereign tribe.  Def. SUF ¶ 3.  The Court understands that Plaintiff filed a second FOIA request seeking additional documents related to the same grant in August 2024; that second request is not at issue in this case.  Def.'s Mem. Supp. 2, n.2, ECF No. 31.

[3] Although Plaintiff has noted her dispute of paragraph four in Defendant's Statement of Undisputed Facts, upon review, her dispute questions whether the documents in the GrantSolutions database in fact constituted all of the information responsive to her request.  The Court accepts as undisputed only the fact that the documents produced by HHS to Plaintiff in September 2024 were drawn from the ACF GrantSolutions database, without (at this point) accepting as true either party's conclusions or allegations as to whether the produced documents in fact constituted all responsive documents in Defendant's possession for the relevant time period.

[4] The Court appreciates that Plaintiff denies that HHS was required to conduct predisclosure notification. The Court accepts as fact only that HHS *believed* certain review procedures were required by law, which is reflected in Plaintiff's Statement of Undisputed Facts as well as Defendant's.  *See* Def. SUF ¶ 7; Pl. SUF ¶¶ 3, 19.

[5] Defendant's Statement of Undisputed Facts does not explicitly address whether emails were stored in its GrantSolutions database and thus part of its document search and production.  *See* Def.'s Mem. Supp. 2–7.

After discussions with Plaintiff, internal deliberations, and consultation with the Mattaponi Tribe, an internal division of HHS exercised its discretion to remove certain redactions from the September 30, 2024 production. Def. SUF ¶ 12. The revised May 30, 2025 production included more detailed federal budget information, applicant-supplied funding information, the names and identities of legal counsel and consultants, resume information, an EIN number, and grant scoring criteria. Def. SUF ¶¶ 12, 13.

## B. Relevant Procedural History

Plaintiff filed her Complaint on July 2, 2024. Compl., ECF No. 1. Defendant timely filed its Answer on August 16, 2024, pursuant to an authorized extension. *See* Answer, ECF No. 12; Order, ECF No. 11. Defendant amended its Answer with Plaintiff's consent on October 1, 2024. Am. Answer, ECF No. 17. The parties participated in two settlement conferences in March of 2025 but were unable to resolve their dispute.

Defendant filed its Motion for Summary Judgment and memorandum in support thereof on June 26, 2025. Def.'s Mot. Summ. J., ECF No. 29; Def.'s Mem. Supp. ECF No. 31. Plaintiff filed her Motion for Summary Judgment on July 10, 2025, with a combined memorandum supporting her motion and opposing Defendant's. Pl.'s Mot. Summ. J., ECF No. 33; Pl.'s Mem., ECF No. 34. Defendant filed its consolidated response-and-reply (hereinafter Reply) on July 31, 2025. Def.'s Reply, ECF No. 37. And Plaintiff filed her consolidated Reply on August 19, 2025. Pl.'s Reply, ECF No. 38.

---

Defendant's Consolidated Reply, however, does not controvert Plaintiff's statement that no emails were produced. The Court thus accepts the factual premise that the September 30, 2024 production by HHS did not include emails. *See* Loc. Civ. R. 56(B).

## II. STANDARD OF REVIEW

The standard of review for cross motions for summary judgment is well-settled in the Fourth Circuit. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011) (citation omitted). Pursuant to that standard, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lawson v. Union Cnty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242, 247–48 (1986) (emphasis in original). A material fact is one that might affect the outcome of the case under applicable law. *Id*. at 248; *Wai Man Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the opposing party, is sufficient to allow a reasonable trier of fact to return a verdict in that party's favor. *Id*.

Particularly relevant to this case, "the Fourth Circuit has explained that 'FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified.'" *Schmitz v. U.S. Dep't of Def. Off. of Inspector Gen.*, 2022 WL 1572245, at *4 (E.D. Va. May 18, 2022) (quoting *Wickwire Gavin, P.C. v. U.S. Postal Serv.* 356 F.3d 588, 591 (4th Cir. 2004)). "In a FOIA action, 'an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested has been produced or is exempt from the Act['s] inspection requirements.'" *Carter, Fullerton & Hayes,*

*LLC v. F.T.C.*, 601 F. Supp. 2d 728, 734 (E.D. Va. Feb. 18, 2009) (cleaned up) (quoting *McCoy v. United States,* 2006 WL 463106, at *5 (N.D.W. Va. Feb. 24, 2006)).  A plaintiff pursuing an action under FOIA must offer more than conclusory statements to establish that either:  (1) the *Vaughn* index[6] does not establish that documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents.  *See id.* (citation omitted).

### III. DISCUSSION

In this case, neither party argues that a genuine issue of material fact exists such that this case should proceed to trial.  Instead, each party argues that it is entitled to summary judgment as a matter of law.  Def.'s Mem. Supp. 8. ("[HHS] is entitled to summary judgment because the agency conducted a reasonable search for responsive documents and properly applied redactions . . . ."); Pl.'s Mem. 19–20 (explaining that Plaintiff's Motion for Summary Judgment should be granted because "the 'Exemption 4' redactions should be removed . . . [,] a search for emails should be ordered . . . [, and] a reasonable search should be required.").  The overarching issues to be decided by this Court are:  (1) whether Defendant's redaction of produced documents pursuant to FOIA Exemption 4 was appropriate; and (2) whether Defendant's document search in response to Plaintiff's FOIA request was reasonable.  Ultimately, for the reasons described below, the Court finds that Defendant's redaction of certain documents pursuant to FOIA Exemption 4

---

[6] A "*Vaughn* index" is a document supplied by government agencies to opposing parties and courts in FOIA litigation that identifies each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of that particular document would damage the interest protected by the claimed exemption.  *S. Env't L. Ctr. v. Council on Env't Quality,* 507 F. Supp. 3d 694, 698 n.1 (W.D. Va. 2020) (cleaned up, citations omitted).  "The *Vaughn* index is a surrogate for the production of documents for *in camera* review, designed to enable the district court to rule on a privilege without having to review the document itself."  *Ethyl Corp. v. EPA,* 25 F.3d 1241, 1249 (4th Cir. 1994).

was appropriate but that its broader document search in response to Plaintiff's FOIA request was not reasonable.

## A. The Lancey Declaration is Appropriate for Consideration

As a threshold matter, the Court must address whether, in adjudicating the instant cross motions, it may properly consider the Declaration of Brandon L. Lancey ("Lancey Declaration")[7] submitted as Exhibit A to Defendant's Memorandum in Support of its Motion for Summary Judgment. Def.'s Mem. Supp. Ex. A ("Lancey Decl."), ECF No. 31-1. Plaintiff argues that the Lancey Declaration is inadmissible because it lacks an adequate foundation. Pl.'s Mem. 12. Specifically, Plaintiff challenges whether Brandon Lancey played any role in preparing HHS's response to her FOIA request and takes issue with the fact that the Declaration does not distinguish which statements are based upon Mr. Lancey's personal knowledge, as opposed to information provided to him in his official capacity as a Lead Government Information Specialist. *See id.* Plaintiff notes in support of her position that, based on HHS's own representations, "personnel who prepared the response to Ms. Gastanaga's FOIA [request] ceased working for the Department in early 2025." *Id.* at 13. According to Ms. Gastanaga, these staffing changes further call into question whether the Lancey Declaration, and the statements and conclusions made therein, are based upon Mr. Lancey's personal knowledge. *See id.* Defendant counters that the Lancey Declaration is properly offered in support of its Motion for Summary Judgment because Mr. Lancey has personal knowledge of the matters described in the declaration notwithstanding the fact that he, in part, relied upon information provided to him by others. Def.'s Reply 1–3.

---

[7] Mr. Lancey's declaration, made under penalty of perjury, is permitted in lieu of an affidavit. *See* 27 U.S.C. § 1746; *see also Willard v. I.R.S.*, 776 F.2d 100, 102 n.3 (4th Cir. 1985) (accepting unsworn declarations of government agents in support of agency's motion for summary judgment in FOIA suit).

An affidavit or declaration used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In FOIA actions, this Court has recognized that "[a]n agency may prove the reasonableness of its search through affidavits of responsible agency officials as long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Carter,* 601 F. Supp. 2d at 734. The Fourth Circuit has further explained that an affidavit (submitted by a government agency at the summary judgment stage of litigation) "must be reasonably detailed, 'setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched' so as to give the requesting party an opportunity to challenge the adequacy of the search." *Ethyl*, 25 F.3d 1247 (citing *Oglesby v. U.S. Dept. of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990)).

Here, the Court finds that the Lancey Declaration meets the benchmark set for affidavits in this jurisdiction and thus is properly before the Court for consideration in support of Defendant's Motion for Summary Judgment. Mr. Lancey begins his declaration by stating his role—Lead Government Information Specialist in the Office of the Assistant Secretary of Public Affairs, Office of the Secretary, within HHS—and explaining that he has led the FOIA litigation and Appeals team within the Office of the Secretary since April 2025. Lancy Decl. ¶ 1. Mr. Lancey's declaration is "reasonably detailed" in its description of the process by which the ACF Office of Grants Management "searched its database . . . for the requested grant . . . [and] downloaded and provided all the information they had in the database about the grant." Lancy Decl. ¶ 8. The declaration names the database, specifies the grant number used to run the search, and broadly relays the timeframe parameter applied to the search. *Id*. ¶¶ 8–9. Although the search described

7

is a simple one, drawn exclusively from one source, that fact goes to the reasonableness of the search—not the adequacy of Mr. Lancey's affidavit.

In the Court's view, the only conclusory statement in the Lancey Declaration states: "All files likely to contain responsive materials were therefore searched." *Id.* ¶ 10. *Ethyl*, however, demands such a statement in order "to give the requesting party an opportunity to challenge the adequacy of the search." 25 F.3d at 1247 ("[T]he affidavit must . . . aver[ ] that all files likely to contain responsive materials (if such records exist) were searched" (internal quotation omitted)). The Court declines to exclude the Lancey Declaration based on what appears to be careful compliance with a relevant mandate of the Fourth Circuit, noting that the resulting "conclusory" statement did in fact tee up Plaintiff's challenge to the FOIA search more broadly, as the Fourth Circuit intended. *See id.*

Additionally, the Court has no reason to question Mr. Lancey's competence or good faith. In fact, on the issue of competency, the Court notes that Mr. Lancey processed FOIA requests as a Government Information Specialist for approximately 13 years before becoming a leader of Defendant's FOIA-focused team. *See* Lancy. Decl. ¶¶ 1–2. And with respect to good faith, Mr. Lancey's use of his declaration, in part, as an opportunity to correct "an inadvertent clerical error" in the *Vaughn* Index that misstates the FOIA exemption applicable to two pages of records is a positive indicator of his earnest participation in this litigation. *See id.* ¶ 20; *Rein v. U.S. Patent & Trademark Office,* 553 F.3d 353, 364 (4th Cir. 2009) (referencing agency's explanation and correction of an oversight amidst FOIA search as an example of the agency's good faith).

Plaintiff fashions her critique of the Lancey Declaration as a challenge to Mr. Lancy's personal knowledge. *See* Pl.'s Mem. 12; 13 ("Department personnel who prepared the response to Ms. Gastanaga's FOIA ceased working for the Department in early 2025. . . . Thus, Lancey has

8

not established that he relied on anyone with personal knowledge in preparing his Declaration."). However, an "affiant's personal knowledge may be based on review of files, if the testimony states facts reflected by the files and does not give inferences, opinions, or surmises." *Howard Acquisitions, LLC v. Giannasca New Orleans, LLC*, 2010 WL 3834917, at *3 (D. Md. Sept. 28, 2010) (internal quotation omitted). Personal knowledge "does not require that an affiant be personally involved in all of the matters at issue," and "can include information obtained from a review of business records." *Lockheed Martin Corp. v. U.S.*, 70 Fed. Cl. 745, 754 (Fed. Cl. 2006).

The Fourth Circuit's endorsement of a government agent's declaration in *Spannaus v. U.S. Department of Justice* is particularly instructive with regard to the personal knowledge issue. In *Spannaus,* the plaintiff sought information from the Federal Bureau of Investigation (FBI) pursuant to FOIA. 813 F.2d 1285, 1286 (4th Cir. 1987). In support of its motion for summary judgment, the Department of Justice submitted the declaration of an FBI Special Agent, stating that the documents the plaintiff had requested related to pending and prospective criminal enforcement proceedings and that their release would therefore cause various harms. *Id.* at 1287. Like Ms. Gastanaga here, the plaintiff in *Spannaus* challenged the sufficiency of the government agent's declaration, contending that "the declaration does not meet the requirement of 'personal knowledge' under Federal Rule of Civil Procedure 56(e) because it does not state that [the Special Agent] was personally involved in the investigations but only that he was familiar with the handling of [the plaintiff's] FOIA request." *Id.* at 1289. The Fourth Circuit found such a contention to be "entirely without merit" because the Special Agent "attested to his personal *knowledge of the procedures* used in handling [plaintiff's] request, and his *familiarity with the documents in question.*" *Id.* (emphasis added).

Just like the Special Agent in *Spannaus,* Mr. Lancy has attested to his knowledge of the procedures used in handling Plaintiff's FOIA request, i.e., searching the GrantSolutions[8] database for a particular grant for a particular time period; downloading information stored in the database; producing documents with information redacted pursuant to three FOIA exemptions; and later revising the production after deliberations with Plaintiff and the Mattaponi Tribe.  Lancey Decl. ¶¶ 7–9, 15–17.  Also like the *Spannaus* Special Agent, Mr. Lancy attested to his familiarity with the documents in question.  *See* Lancy Decl. ¶ 4 ("I have reviewed the documents at issue in the above-captioned litigation, as well as the *Vaughn* [I]ndex describing withheld information that is at issue.").  The Court thus concludes that Mr. Lancey "has demonstrated ample personal knowledge to render him competent to testify" regarding the processing of Plaintiff's FOIA request and attendant withholdings.  *See Spannaus,* 813 F.2d at 1289.  The Court declines to find that, because some HHS employees who participated in the FOIA search at issue have since left the department, Mr. Lancey—the current Lead Government Information Specialist and leader of the pertinent FOIA team at HHS—lacks personal knowledge of the relevant matters.[9]  *See* Lancey Decl. ¶¶ 1, 3–4.

Plaintiff does not identify—and the Court is not aware of—any other admissibility issues with respect to the Lancey Declaration that render it inadequate for Defendant's use in support of its Motion for Summary Judgment.  Plaintiff's criticism that Mr. Lancey "mash[es] all her [sic] sources together" does not identify any authority suggesting that courts can and do reject affidavits in this context on such a basis.  Pl.'s Reply 2.  Plaintiff further neglects to acknowledge that "the

---

[8] The Court observes that Mr. Lancey twice refers to the database as "GranSolutions" not "GrantSolutions." *See* Lancy Decl. ¶ 8.  Given the reference to GrantSolutions in the same paragraph, the Court believes the two "GranSolutions" references to be mere typographical errors.

[9] Notably, if the foundation for an entity's proffered evidence evaporated every time an employee associated with that evidence left, organizations of all kinds would be significantly disadvantaged in the practice of civil litigation. Employee turnover is an unavoidable reality for all organizations, the Government included.

evidence supporting a motion for or opposition to summary judgment need not be admissible in its current form." *Sectek, Inc. v. Diamond,* 2016 WL 4445470, at \*2 (E.D. Va. Aug. 19, 2016) (citing *Jones v. W. Tidewater Regional Jail,* 2016 WL 2726197, at \*2–3 (E.D. Va. May 6, 2016)). Indeed, "[a] party moving for or opposing summary judgment must rely on 'facts that *could be* put in admissible form.'" *Id.* (emphasis in original) (quoting *Jones*, 2016 WL 2726197, at \*3). Absent specific arguments from Plaintiff explaining how the material contained in the Lancey Declaration could not be presented in a form that would be admissible in evidence, the Court accepts the Lancey Declaration as properly before the Court in support of Defendant's Motion for Summary Judgment.

## B. Defendant's Redaction of Documents Pursuant to FOIA Exemption 4

Having established the relevant universe of facts available for consideration, the Court turns to Defendant's redaction of documents pursuant to FOIA Exemption 4. Defendant's *Vaughn* Index organizes and describes the redacted documents Defendant produced in response to Plaintiff's FOIA request. Def.'s Mem. Supp. Ex. B, at 1. Ms. Gastanaga accepts the redactions asserted by Defendant pursuant to FOIA Exemptions 5 and 6, which HHS organized in its *Vaughn* Index as Groups 2 and 3, respectively. Def.'s Mem. Supp. Ex. B, at 1; Pl.'s Mem. 2. The Court will not address these uncontested redactions. Ms. Gastanaga disputes, however, the appropriateness of redactions organized by HHS as Group 1, with the exception of two items: (i) *Vaughn* Index Item 1.c ("Dollar figure for the Tribal Council's annual budget"); and (ii) *Vaughn* Index Item 1.k ("PIN and Account numbers"). Def.'s Mem. Supp. Ex. B, at 2, 4; Pl.'s Mem. 2.

Ms. Gastanaga ultimately seeks judgment requiring Defendant to remove all Exemption 4 redactions listed in HHS's *Vaughn* Index, except those described at *Vaughn* Index Items 1.c and 1.k, and to produce the unredacted documents. Pl.'s Mem. 3. She argues that the "major problem

11

with [Defendant's] redactions under [Exemption] 4 is that [HHS] is resisting disclosure of *grant-specific* [ ] information, not just information about the applicant's business outside the context of the grant and grant application." *Id.* at 15. And grant-specific information detailing what an applicant is contributing to a project is not customarily and actually treated as private by its owner, says Plaintiff, because a specific federal grant application is not "customary," and a grant applicant is not the "owner" of that information. *Id.* at 16–17. Ms. Gastanaga insists that the broader purpose of FOIA is undermined "if the recipient of a federal grant is allowed to close the door to the conditions of that grant and keep members of their own Tribe, the public and taxpayers uninformed about whether those conditions have been met, or the public funds responsibly spent." *Id.* at 17. Defendant counters that it properly applied Exemption 4 because all of the redacted information in Group 1 is commercial or financial, obtained from a person, and "customarily and actually treated as private by its owner." Def.'s Mem. Supp. 11–14. Defendant also invokes the FOIA Improvement Act to defend its Group 1 redactions pursuant to Exemption 4. *Id.* at 14.

In enacting FOIA, Congress "recognized that legitimate governmental and private interests could be harmed by release of certain types of information." *Wickwire,* 356 F.3d at 592 (citation omitted). Accordingly, Congress crafted nine FOIA exemptions. *Id.*; 5 U.S.C. § 552(b). FOIA places the burden on the government agency to sustain its action to withhold information under any of the FOIA exemptions. *Wickwire,* 356 F.3d at 591; 5 U.S.C. § 552(a)(4)(B). Exemptions are narrowly construed in favor of disclosure. *Food Mktg. Inst. v. Argus Leader Media,* 588 U.S. 427, 440 (2019) (citing *J.P. Stevens Co. v. Perry*, 710 F.2d 136, 139 (4th Cir. 1983)). However, under 5 U.S.C. § 552(a)(8)(A)(i), an agency must withhold information if it reasonably foresees that disclosure would harm an interest protected by an exemption or if disclosure is prohibited by law. With respect to exemptions claimed, "[i]f the Government fairly describes the content of the

12

material and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position." *Carter*, 601 F. Supp. 2d at 738 (citing *Spannaus,* 813 F.2d at 1288).

Exemption 4 shields from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). To establish that Exemption 4 applies, the government must show that the documents at issue: (1) are trade secrets or commercial or financial information; (2) were obtained from a person outside the government; and (3) are privileged or confidential. *Am. Mgmt. Servs., LLC, v. Dep't. of the Army*, 703 F.3d 724, 729 (4th Cir. 2013) (citing *Acumenics Research & Tech. v. DOJ,* 843 F.2d 800, 807 (4th Cir. 1988)). The Supreme Court clarified in 2019 that "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4."[10] *Argus Leader*, 588 U.S. at 440.

Here, the Court concludes that Defendant properly applied Exemption 4 and redacted information appropriately from Group 1 documents produced to Plaintiff. Upon review of the *Vaughn* Index, each of the 19 items in Group 1 relates to budgeting, forecasted cash needs, salaries, billing rates, and costs for specific budget categories including supplies, travel, events, equipment, and facilities. Def.'s Mem. Supp. Ex. B, at 2–6. It is difficult to conceive of information that is more financial in nature. Especially in light of the factual context of this suit—application for and award of a monetary grant—the Court is assured that the information redacted pursuant to FOIA

---

[10] The Fourth Circuit has not yet engaged with FOIA Exemption 4 in the wake of *Argus Leader. See AMA Sys., LLC, v. F.D.A*, 2024 WL 712465, at *6 (D. Md. Feb. 21, 2024). As a result, there is limited case law available "[w]hen it comes to identifying what counts as information that is 'customarily . . . treated as private.'" *See id.* (quoting *Argus Leader,* 588 U.S. at 440).

13

Exemption 4 and detailed item-by-item in Defendant's *Vaughn* Index constitutes "financial information."

All nineteen informational items in Group 1 subject to Exemption 4 redactions by Defendant are also evidently obtained from a person outside the government.  FOIA broadly defines a "person" to include an "individual, partnership, corporation, association, or public or private organization other than an agency."  5 U.S.C. § 551(2).  For purposes of Exemption 4, "information is considered obtained from a person . . . so long as the information did not originate within the federal government."  *Ctr. for Biological Diversity v. United States Forest Serv.*, 2025 WL 947472, at *7 (D.D.C. Mar. 28, 2025) (quoting *Elec. Priv. Infor. Ctr. v. DHS,* 117 F. Supp. 3d 46, 63 (D.D.C. 2015)).  Defendant's *Vaughn* Index specifies that each of the nineteen items in Group 1 is "[n]on-[f]ederal financial information."  Def.'s Mem. Supp. Ex. B, at 2–6.  Logically, non-federal financial information would not have come from the federal government and thus is considered "obtained from a person" under FOIA's broad definition.

The Court further observes that the United States District Court for the District of Columbia previously concluded that a different American tribe was "plainly a person within the meaning of [FOIA]."  *Indian L. Res. Ctr. v. Dep't of Interior*, 477 F. Supp. 144, 146 (D.D.C. 1979) (citing 5 U.S.C. § 551(2)), *overruled in part by Argus Leader,* 588 U.S. 427 (2019).  Thus, to the extent that Group 1 items were obtained from the Mattaponi Tribe itself—all items except 1.s. are described as having been drawn from its grant application—the Court concludes that the items were obtained from a person outside the government on this basis as well.  *See* Def.'s Mem. Supp. Ex. B, at 2–6.  As for Item 1.s., the corresponding *Vaughn* Index entry describes the redacted material as "Notice of Award, approved budget dollar amounts:  Salaries and wage, personnel, supplies and 'other' financial information."  Def.'s Mem. Supp. Ex. B, at 6.  Reading this description in the context of

14

the remainder of Group 1, it follows that the Notice of Award likely references and/or restates the same financial information submitted by the Mattaponi Tribe as part of its grant application. *See* Def.'s Mem. Supp. Ex. B, at 2–6.   Because "a document the government produces may nevertheless count as information 'obtained from a person' if the document essentially reproduces information that was supplied to the agency by a person or could allow others to extrapolate such information," Item 1.s. in Defendant's *Vaughn* Index is properly considered obtained from a person as well. *AMA Sys.*, 2024 WL 712465, at *10 (citations omitted).

Lastly, in light of the Supreme Court's ruling in *Argus Leader,* the Court finds that Defendant has shown that the redacted information in Group 1 is "confidential" for purposes of FOIA Exemption 4.   Engaging in a plain language analysis, *Argus Leader* set forth that "information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it."  588 U.S. 434 (citing Webster's Third New International Dictionary 476 (1961); Black's Law Dictionary 370 (rev. 4th ed. 1968)).  "In another sense," the majority continued, "information might be considered confidential only if the party receiving it provides some assurance that it will remain secret." *Id.* (citations omitted).  "At least the first condition has to be [met]" for information to be considered confidential under Exemption 4. *Id.*  ("[I]t is hard to see how information could be deemed confidential if its owner shares it freely.").  As for the second condition, the majority found no need to resolve the question of whether "privately held information can *lose* its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private," because, in *Argus Leader* at least, "the government ha[d] long promised [the appellants] that it [would] keep their information private." *See id.* at 435 (citation omitted).

15

This case presents similar circumstances, leading the Court to a similar conclusion: the financial information obtained from the Tribe is "confidential" within the meaning of Exemption 4. *See id.* at 449. In his declaration, Mr. Lancey explains that in executing the predisclosure notification procedures promulgated at 45 C.F.R. § 5.42, the Mattaponi Tribe informed the relevant HHS team that the redacted information was "treated as private by the Tribe." Lancey Decl. ¶¶ 19, 20; *see Ctr. for Med. Progress v. HHS,* 2022 WL 401667, at *10 (D.D.C. Sept. 3, 2022) (describing various ways of showing personal knowledge of custom, including relaying that the submitters themselves told the agency that the information is confidential) (citation omitted); *see also Carter*, 601 F. Supp. 2d at 738 (the Court "is entitled to accept the credibility of [supporting] affidavits, so long as it has no reason to question the good faith of the agency" (citing *Spannaus,* 813 F.2d at 1288)). At the risk of stating the obvious, the financial information redacted as part of Group 1 is not freely shared by the Mattaponi Tribe. And, upon review of *Vaughn* Index Group 1, this makes sense. Budget values, expenses, salaries, and account/PIN numbers constitute financial information that is confidential by nature and customarily held private by people and organizations generally, with the important exception of traditional state and federal governments.

Plaintiff's argument, that there can be no customary treatment of information provided for a specific grant, is unavailing. Pl.'s Mem. 16. Just because an applicant provides information in a grant application does not mean the information has no other relevance or use. It is entirely possible, and even likely, that the Mattaponi Tribe utilizes the same financial information for purposes of its own internal operations and other governmental partnerships, and thus has a consistent practice of treating its financial information as private. Plaintiff also doubts whether the Mattaponi Tribe can be considered the "owner" of information "included by the government as part of the terms of a government grant." Pl.'s Mem. 17. This assertion goes against common

16

sense.  The government's reliance on information provided by another stakeholder does not automatically erase the stakeholder's rights in whatever he or she provided. If that were the case, the government would be considered the "owner" of medical records submitted by an applicant for Social Security Disability Insurance and the "owner" of a birth certificate submitted with an individual's passport application.  Plaintiff cites no case law suggesting that a person, entity, or tribe forfeits its ownership interests in documents or information upon application for a federal government grant, and the Court declines to adopt a line of reasoning with clearly problematic implications.

With regard to the second condition described in *Argus Leader*, Mr. Lancey has declared under penalty of perjury that "[t]he Mattaponi Tribe's information was provided to ACF under an assurance of privacy . . . ACF informs all grant applicants that information will be released, if applicable, pursuant to FOIA but subject to withholding under applicable FOIA exemptions." Lancey Decl. ¶ 13.  The Court further notes that Defendant's Grants Policy at the time of the Mattaponi Tribe's application assured applicants generally that HHS and its operating divisions "do not release trade secrets and commercial, *financial*, and otherwise intrinsically valuable items of information that are obtained from a person or organization and are privileged or confidential." Def.'s Mem. Supp. 13–14 (quoting Jan. 1, 20[0]7 HHS Grants Policy Statement at I-28, and citing *id*. at I-1 (both effective through October 2024)).[11]  Finding that the Group 1 redactions constitute financial information that is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy," the redacted information catalogued

---

[11] The Court takes judicial notice of the fact that the Policy contained the quoted language, as the archived policy document linked by Defendant is a source whose accuracy cannot reasonably be questioned, and Plaintiff had opportunity to challenge this policy language by way of her responsive brief but did not do so.  Fed. R. Ev. 201.

at Group 1 of Defendant's *Vaughn* Index is confidential within the meaning of FOIA Exemption 4. *See Argus Leader*, 588 U.S. at 440.

The Court declines Plaintiff's invitation to order *in camera* review of the documents redacted pursuant to FOIA Exception 4 because Defendant's *Vaughn* Index contains itemized information for all Group 1 materials, describing the type of financial information each item contains with reasonable specificity; noting its non-federal quality; and naming its source, i.e., the grant application. Because the *Vaughn* Index entries for Group 1—the only group of redacted materials Plaintiff challenges—contain an adequate factual basis to support the Defendant's invocation of FOIA Exemption 4, the Court accepts the *Vaughn* Index as adequate. *See Rein,* 553 F.3d at 370.

Ultimately, because Defendant has met its burden to show that the Group 1 redacted materials are (1) financial information; (2) obtained from a person outside the government; and (3) confidential, the Court concludes as a matter of law that Defendant's redactions were properly applied pursuant to FOIA Exemption 4. *See American Mgmt. Servs.*, 703 F.3d at 729 (4th Cir. 2013) (citing *Acumenics,* 843 F.2d at 807). Although, as Plaintiff appropriately emphasizes, the essence of FOIA properly favors disclosure, nine exemptions temper its reach. Defendant here has shown that its Group 1 redacted documents fall within the bounds of Exemption 4 as delineated by the United States Supreme Court and applied in the Fourth Circuit. HHS thus appropriately redacted the Group 1 items to prevent exposure of exactly the kind of confidential information Exemption 4 seeks to protect. *See* 5 U.S.C. § 552(a)(8)(A)(i).

## C. Reasonableness of Defendant's Document Search

The last issue raised by the parties in their cross motions for summary judgment is the overall reasonableness of Defendant's document search. Defendant argues that its search in

18

response to Plaintiff's FOIA request was reasonable because it searched its GrantSolutions database for the relevant grant, downloaded all the information in the database about the grant from the time Plaintiff's request was received until the time the search was completed, and provided that information to Plaintiff. Def.'s Mem. Supp. 9–10. Plaintiff explains that its "grants policy requires that all official grant-related and supporting documents be uploaded in GrantSolutions." *Id.* at 9. "Thus," Defendant insists, "all files likely to contain responsive materials were searched." *Id.* at 10. Plaintiff challenges Defendant's reliance on its grants policy, questioning "whether there are categories of responsive documents that are not routinely put into GrantSolutions." Pl.'s Mem. 14. Regardless of what Defendant's grants policy prescribes, Plaintiff argues that compliance with the policy is a different question, and here, "there is no evidence that the policy was followed, or that the uploading of documents was completed before [the FOIA search]." *Id.* In support of her position, Plaintiff notes that her FOIA request "specifically asked for emails," since email is a primary form of communication in today's workplace. *See id.* And yet, "no emails were produced by the Department, nor does the Lancey Declaration attempt to account for their absence." *Id.* On this issue—the reasonableness of Defendant's search—the Court finds for Plaintiff.

The purpose of FOIA is again instructive. Congress enacted 5 U.S.C. § 552 as "a policy of broad disclosure of Government documents to ensure an informed citizenry, vital to the functioning of a democratic society." *Wickwire,* 356 F.3d at 591 (cleaned up). Upon receiving a proper request, an agency like HHS "must conduct a reasonable search for responsive records and must establish that it has 'made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested.'" *McCoy,* 2006 WL 463106, at *5 (quoting *Oglesby,* 920 F.2d 68).

19

"Reasonableness is measured by the method of [a] search, not its results." *Id.* at *12 (citing *Clearly, Gottlieb, Steen & Hamilton v. HHS,* 844 F.Supp. 770, 777, n. 4 (D.D.C. 1993)). An agency is not required to search every system of records, but only those systems in which responsive documents are likely to be located. *Id.* (citing *Oglesby*, 920 F.2d at 68). Reasonable does not mean exhaustive, and the adequacy of the search depends on the circumstances of the case. *Id.* (first citing *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990), and then citing *Miller v. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). Federal district courts have jurisdiction to "enjoin the [a]gencies from 'withholding [a]gency records and to order the production of any [a]gency records improperly withheld.'" *Ethyl,* 25 F.3d at 1245–46 (quoting 5 U.S.C. § 552(a)(4)(B)).

Here, the Court agrees with Plaintiff that Defendant has failed to demonstrate that the search it conducted in response to her FOIA request was reasonably calculated to uncover all relevant documents. *See Ethyl*, 25 F.3d at 1246. Having an internal policy requiring that "all official grant-related and supporting documents be uploaded in GrantSolutions" is one thing, but whether Defendant's employees consistently and promptly follow that policy is quite another. *See* Lancey Decl. ¶ 8. Defendant does not offer any evidence regarding the implementation of its policy, corresponding procedures, or oversight by leadership. *See generally,* Lancey Decl. And when the reliability of the exclusive source for Defendant's FOIA production is in question, the Court cannot cosign the search as comprehensively reasonable.

Like Plaintiff, the Court is struck by the complete absence of emails from Defendant's production despite the almost three-year timeframe of the search. *See id.* ¶ 9. Although "an agency is entitled to limit its search based on an appropriate internal analysis of the locations where responsive documents are most likely to be located[,]" *Carter,* 601 F. Supp. 2d at 735, HHS has

20

not proven that responsive documents are most likely to be located in GrantSolutions, nor has it demonstrated to the Court's satisfaction that its internal analysis of locations for potentially responsive documents was appropriate.[12]  The Court accepts that an agency is not required "to comb through employee emails when it ha[s] *reasonably determined* that any email relevant to the processing of . . . [the] FOIA request would be in [the agency's records system]."  *Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1, 14 (D.D.C. 2019) (emphasis added).  Here, however, a showing of such a reasonable determination is lacking in the record before the Court.  Mr. Lancey did not declare that there are no emails responsive to Plaintiff's explicit request for them or that the Department does not utilize email for grant correspondence.  *See generally,* Lancey Decl. Absent such assurances, Defendant's method of producing 260 documents from a simple search of a singular source cannot be "reasonably expected to produce the information requested."  *See McCoy*, 2006 WL 463106, at *5 (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment on the issue of redactions pursuant to FOIA Exemption 4 and grant Plaintiff's Motion for Summary Judgment on the issue of broader reasonableness of Defendant's document search in response to her FOIA request.  Per the mutual request of the parties, the Court will reserve the issue of awarding attorney's fees until a later date and will in the interim order that the parties participate in a settlement conference on the narrow issue of attorney's fees.  *See* Pl.'s Mem. 19; Def.'s Reply 10.  An appropriate Order will accompany this Memorandum Opinion.

Date: <u>March 31, 2026</u>
Richmond, Virginia

/s/ _____
Roderick C. Young
United States District Judge

---

[12] Ironically, the primary case Defendant utilizes to support its emphasis on agency discretion in selecting the sources for a FOIA search involved searching more than twenty email boxes.  *See Empower Oversight Whistleblowers & Rsch. v. U.S. Dep't of Veterans Affairs,* 2024 WL 3278613, at *2 (E.D. Va. July 1, 2024).